Plaintiff in this case has appealed from a judgment rejecting his demands for damages for the death of his eleven-year-old daughter who was struck by an automobile owned by one of the defendants and operated at the time by the other. The lower court rendered a written opinion in which it correctly set forth the issues and determined them against the plaintiff. It is as follows:
"This is a damage suit arising out of an automobile accident on Jefferson Highway 71, on the afternoon of October 12, 1941, at 5:30 P.M., resulting in the death of Lena Gauthier, the minor daughter of the plaintiff, Mitchell Gauthier. The defendants are T.C. Foote and W.J. Johnson, who are both residents of the Parish of Rapides, the former being the operator of the car at the time of this unfortunate accident and the latter the owner of same. There were three other passengers in the car and they were traveling in a northerly direction toward the Town of Bunkie, Louisiana, on their return home from Opelousas, Louisiana, having spent the day there with friends.
"It is alleged that the accident occurred about four miles south of Bunkie and practically directly in front of the home of *Page 10 
the plaintiff, Gauthier, father of the deceased child. That in company with her aunt, Teckley Ducote, age nine, they proceeded to a neighbor's home at the request of her mother to get some milk, and before reaching the highway they had to cross a barrow-pit approximately 8 feet deep, over which ditch there is a stairway going up the side of this ditch next to the highway and that between said ditch and concrete highway is the shoulder of the road. That on said shoulder of the road there was a parked Ford car belonging to Willie Ducote, one of the witnesses in this suit, who is a son-in-law of Mitchell Gauthier.
"It is further alleged that the defendant was operating his car on said highway at a careless and reckless speed and without a proper lookout for pedestrians on said highway, and because of defendant's excessive rate of speed, his recklessness and carelessness, it is the direct and proximate cause of said accident.
"Plaintiff further alleges that because of Lorena Gauthier's youth defendant should have exercised more care and caution to see deceased and having failed to see her when he should when she attempted to cross the road, defendant is guilty of contributory negligence and is liable to plaintiff.
"It is further alleged that the defendant could have avoided said accident by pulling his automobile to the left side of the road immediately upon seeing the children on the highway or sounded his horn or applied his brakes, and if this had been done, the accident would have been avoided.
"It is further urged by plaintiff that should the court hold contributory negligence on the part of plaintiff's child, the defendant nevertheless is liable under the doctrine of last clear chance, basing his theory on the hypothesis that defendant had ample opportunity to avoid or extricate himself from the sudden peril he was confronted with, if he had not himself been guilty of contributory negligence, because he was not on a proper lookout when he saw the parked car and approaching truck, and he should have either swerved to the left side of the road or gone into the ditch in order to avoid striking the child.
"The defendants deny that the death of the said Lorena Gauthier was due to their fault or negligence, but on the contrary allege that it was due solely to the gross fault and negligence of plaintiff's minor child in suddenly attempting to emerge from the back of the parked car, after perceiving and knowing the approach of a truck and trailer coming from toward the Town of Bunkie which could plainly by seen by them. That the deceased contributed to her own negligence in attempting to cross said highway before she had satisfied herself that it was clear of any approaching vehicle from either direction and they therefore deny any liability as a result of said accident.
"As the Court sees it, there are three questions presented to it in a proper disposition of the case and they are as follows:
"1. Was Mr. T.C. Foote, the driver of the Johnson car guilty of negligence at the time of the accident?
"2. Was Lorena Gauthier guilty of negligence and because of her age could she so contribute?
"3. Does the doctrine of last clear chance apply in the case?
"Aside from the exact distance Mr. Foote was when he first discovered Lorena Gauthier and Teckley Ducote standing on the west side of said highway back of the parked car, and the contention of plaintiff that defendant could have seen them when they suddenly darted from their position back of the parked car before they started across the highway from which place they had been standing, according to Teckley Ducote's testimony, there is not much dispute or difference as to how the accident occurred because she testified she saw defendant's car coming toward them going in the direction of Bunkie as they stood back of the parked car.
"Mr. Foote testified that about 200 yards before reaching the parked car in front of the Mitchell Gauthier home, he noticed a truck and trailer coming toward him from the direction of Bunkie, and not knowing definitely whether the parked car in front of Gauthier's home was in motion or not, he lowered his speed gradually from about 40 to 50 miles to approximately 25 or 30 miles as he approached the parked car, and as the truck cleared the back part of the parked car on said highway, he cleared said truck and it was not until he was then 10 or 12 feet from Lorena Gauthier and Teckley Ducote that he noticed them attempting to cross said highway. That both of them were running across said highway with Teckley Ducote immediately back of Lorena Gauthier; that as soon as he saw the oncoming truck and the parked car, he realized that there was an apparent possibility of crossing the *Page 11 
truck at or near the spot where the car was parked, and for that reason he had lowered his speed and that if Lorena Gauthier and Teckley Ducote had been back of the parked car, as testified to by Teckley Ducote, they had been there before he reached a position on said highway where he could see them, and since according to her testimony they had been there four or five minutes, it was impossible for him to have seen them cross the ditch and since they were standing back of said parked car, he was not in a position to see them at any time as he approached the parked car, having to keep his attention also on the approaching truck and trailer.
"He is positive in his testimony that when he first discovered Lorena Gauthier and Teckley Ducote, they had both started running across said highway at a distance of about ten or twelve feet back of the parked car and that was just as he met the truck and trailer. That immediately upon discovering this sudden peril, he quickly swerved his car to the extreme right of the highway and landed into the ditch on the right hand side of said road; that there were passengers in his car and that he could not apply his brakes too suddenly because he would have endangered the lives of the passengers in his car; that if he had swerved his car to the left of said highway, he would positively have killed both Lorena Gauthier and Teckley Ducote.
"Teckley Ducote testified that she at no time passed the black center line of said highway, but that Lorena Gauthier did, and that Lorena Gauthier was hit just across the black line of said highway, and that she was about a yard or two from her when she was struck by the Johnson car; that at the time they stood on the edge of said highway, they were holding hands, and that Lorena Gauthier in her eagerness to cross said highway, broke away from her. Teckley Ducote further testified that she cautioned Lorena to watch out — `there is a car coming' — when she started across the road, but that she did not heed her warning and in disregard of the approaching car, broke loose from her and ran across said highway. That she did so immediately after the truck had cleared them from the position where they stood. That she, Teckley Ducote, before attempting to cross said highway, looked at both sides of the highway north and south or right and left, and that Lorena apparently did not look to see if there was any approaching vehicles at the time she attempted to cross said highway.
"It is true that under the jurisprudence of Louisiana a motorist is under duty to use every precaution and care as well as a lookout for pedestrians on highways, and the doctrine is well settled in the case of a collision if the motorist saw or should have seen the pedestrian in time to avoid the accident, then he is to be held liable under the doctrine of last clear chance.
"This has been held in repeated decisions of the Supreme Court (Jackson v. Cook, La.App., 181 So. 195). Of course, that is dependent upon the circumstances surrounding the case. It must be affirmatively and conclusively shown that the defendant actually discovered the perilous position of the plaintiff in time to prevent the accident, and fails to do so. If Lorena Gauthier carelessly and negligently and without exercising some kind of caution attempted to run across this much traveled highway immediately after the truck and trailer passed her, and she was standing back of the parked car and Mr. Foote passed the truck and trailer as it cleared the parked car, the Court cannot conceive how he would have been in a position to see Lorena Gauthier and Teckley Ducote until he was about ten or twelve feet from them, especially so if Lorena Gauthier and Teckley Ducote's attention was directed mainly at the approaching truck instead of looking for cars going also in a northerly direction on said highway toward Bunkie, and under the circumstances the doctrine of last clear chance cannot in the Court's opinion, apply in this case.
"The Court has found no evidence to show that Mr. Foote was at any time careless or negligent in the operation of his car on that fateful moment because from the physical facts, it is clearly shown that after striking Lorena Gauthier, his car stopped within a very short distance from where he struck her, and the evidence shows that he exercised all the caution and care a reasonable and prudent man would have exercised under such trying and unfortunate circumstances.
"Counsel for plaintiff cites as a parallel case Borman v. Lafargue et al., 183 So. 548, decided by the Court of Appeal in 1938. In that case the child had not only circled around the parked car and then emerged from it but additionally other parties were *Page 12 
alighting from the car within plain view of the defendant, and he had ample notice from the distance he saw them to avoid striking her if he had exercised more care, but the facts and circumstances in this case are different. This decision is consistent with Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, La.App., 181 So. 195.
"On the question of discovered peril such as this case may be classified the Louisiana Court of Appeal in Stansbury v. Drillon,2 So.2d 662 [663], in which the operator of a motor vehicle was suddenly confronted with a rather similar situation, as in this case, the Court had this to say:
"`There is involved only one question and that one of fact: Could Drillon, had he been on the alert, have seen Buchanan and appreciated his danger in time to have avoided an accident, or did Buchanan emerge suddenly from the obscurity afforded by the parked taxicabs and walk out into the street when it was no longer possible for Drillon to have avoided him?
"`That Buchanan was negligent in walking into the street without looking for approaching vehicles is obvious, and for many years it was well established in this state that, under such circumstances, there could be no recovery by or on behalf of such a negligent pedestrian. But, in Rottman v. Beverly, 183 La. 947,165 So. 153, and in Jackson v. Cook, 189 La. 860, 181 So. 195
[196], the Supreme Court has established a doctrine under which it is now held that, regardless of the negligence of a pedestrian in going into a dangerous position without looking and regardless of the continuing negligence of such a pedestrian in remaining in such a dangerous position, there may be recovery for injuries sustained if an automobile driver saw, or should have seen, the danger of the pedestrian, and should have realized the peril and yet failed to do all that was reasonably possible to avoid striking the said pedestrian.' See Jamison v. State et al.,7 So.2d 373.
"Mr. Foote, the driver of the car, while admitting the unfortunate accident, denies any negligence on his part, and particularly that he was driving fast and in a careless and reckless manner, but on the contrary, he is positive that at a distance of not less than 200 yards from the parked car, he saw the oncoming truck with a trailer, and realizing that he would cross said truck and trailer on said highway probably at the spot where the car was parked, slowed down his speed. If Lorena Gauthier and Teckley Ducote had emerged from the ditch and walked back of the parked car at any time from the moment he first saw the truck coming in his direction, he would have noticed the girls emerging from said ditch and would have seen them walk back of the parked car, because there was no obstruction to keep him from seeing them, but he is positive he at no time saw them, and the Court is constrained to the belief that they had been there before Foote saw the truck and trailer coming and that they were back of said parked car because they had seen the truck and trailer and stood there to wait until it had passed them before attempting to cross said highway.
"Teckley Ducote is not positive how long they had been back of said parked car but she did testify they had been there four or five minutes. If her testimony is true, and we must assume it is, and the testimony of Mr. Foote is also true that when he saw the approaching truck at the distance of 200 yards from the parked truck, in that case, the Court is bound to reach the irresistible and inevitable conclusion that Mr. Foote could not see the children leave the house, cross the bridge and enter the shoulder of the road, as is claimed by plaintiff.
"That the two girls were negligent in running across the highway without looking in both directions for approaching automobiles is obvious to the Court, and as unfortunate and distressing as it is for the suffering ones left behind to moan the sad and tragic death of this young girl, the Court cannot, under the facts adduced in this case, find legal responsibility on the part of defendants. As is always the case in suits of this kind, the evidence on some of the questions of fact are conflicting and the court sees no useful purpose to quote from the testimony of the several witnesses. Suffice to say the facts speak for themselves. The witnesses for plaintiff positively declare that Mr. Foote was driving at a careless and reckless speed and those of the defendants are equally positive that Mr. Foote was driving at a rate not to exceed 25 to 30 miles per hour when Lorena Gauthier was struck. Practically the only witnesses for the defendants were the occupants of the car while on the other hand most of the witnesses for plaintiff were members of the Gauthier family and intimate friends.
"The Court has carefully considered the testimony of the witnesses both for plaintiff *Page 13 
and defendants and is satisfied that the evidence does not justify holding Mr. Foote or Mr. Johnson legally responsible for this unfortunate accident because of lack of alertness considering the physical circumstances of this case, together with the facts and circumstances developed during the trial thereof.
"In view, of the doctrine of law as to discovered peril and the facts of this case, the Court does not believe Mr. Foote had time to discover the deceased when she suddenly darted across the highway from the parked car in order to avoid striking her no matter what he did or could have done, and that it was impossible for him to have averted the accident.
"For these reasons, as well as the other reasons hereinabove assigned, the demands of plaintiff are hereby rejected."
The only error of fact we find in the opinion of the lower court is in the speed of defendants' car at the time of the accident. It stated that defendants had reduced the speed of their car to 25 or 30 miles per hour just before the impact with the child. The record does not disclose that to be a fact. It is certain, to our minds, that at the time the child was struck by the car it was traveling at a speed of approximately 40 miles per hour.
Counsel for plaintiff has filed a brief replete with citations of cases involving automobile accidents where pedestrians were injured or killed and we have carefully reviewed the authorities cited and conclude they are not applicable to the facts of this case. Many of the cases cited hold that the duty of the operator of the car to the pedestrian is far greater than the duty of the pedestrian toward the car operator, but Act 286 of 1938, § 3 Rule 11 (d) provides that pedestrians crossing highways outside the corporate limits of incorporated cities or towns shall yield the right of way to approaching vehicles.
This accident occurred in the open country four miles south of Bunkie, Louisiana, on a paved highway and one of the busy thoroughfares of this State. The road was straight and there were only a few residents in that vicinity. To operate a car at a speed of 50 to 55 or even 60 miles per hour would not have been excessive in that locality.
When defendants were one-half mile south of the scene of the accident they observed a car parked on the shoulder off the west side of the pavement. Defendants were traveling north occupying the east side of the pavement and when within 200 yards of the parked car they observed a heavy truck with trailer traveling south on the west side of the highway and defendants realized that to continue at the speed they were then making would cause the truck and their car to pass at a point even with the parked car. Defendants' driver took his foot off the accelerator and the speed of the car was reduced to 40 miles per hour or less. This precaution on the part of the driver of defendants' car was taken with the thought in mind that the truck might swerve slightly to its left in passing the parked car, which the record shows it did. As the rear of the truck cleared the front end of the parked car, which was facing south, the front end of defendants' car cleared the rear of the trailer attached to the truck.
The decedent and her niece, nine years of age, had left decedent's home which was west of the highway and started across. When they arrived at the highway they observed the truck coming from the north and stopped behind the parked car to await its passing. According to the testimony of decedent's niece, who was not injured, they had been standing there for several minutes. As soon as the rear end of the trailer had passed them they started running across the highway, decedent being in the lead. It was at that moment that defendants' car cleared the truck and trailer.
Both defendants testified that decedent was then about twelve feet in front of them. The little nine-year-old child discovered the car and stopped, falling as she did, however, decedent apparently never saw the car. The driver of defendants' car immediately cut his car to the right in an effort to prevent striking the children but was unable to avoid hitting the decedent. The car continued down the embankment into the ditch. Defendants did not see and could not have seen the children standing behind the parked car and had no reason to think or suppose anyone would be there.
The accident, insofar as defendants are concerned, was entirely unavoidable. They were not guilty of any negligence and when confronted with an emergency not of their making they did all that was humanly possible to avoid the accident. There is certainly no place in this case for the application of the last clear chance doctrine.
The judgment of the lower court is correct and is affirmed. *Page 14