JOHN L. PATTEN, individually and as former director of Lincoln Road Association, Inc., WILLIAM TARADASH, individually and as director of Lincoln Road Association, Inc., and BARRY SIRKIN, individually and as director of Lincoln Road Association, Inc., v. A. JOSEPH DAOUD.

12 So. (2nd) 299                                    January Term, 1943
March 2, 1943                                              En Banc
Rehearing Denied March 26, 1943

*Henry D. Williams, Alvin Cassel* and *Charles B. Cleveland,* for petitioners.

*Edward E. Fleming* and *Tyrus A. Norwood* for respondent.

*Glynn O. Rasco* and *Harry Gordon* and *Darry A. Davis,* as Amicus Curiae.

PER CURIAM:

Certiorari denied.

BROWN, THOMAS, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., TERRELL and CHAPMAN, JJ., dissent.

TERRELL, J., dissenting:

A. Joseph Daoud, as plaintiff, brought an action against petitioners as defendants to recover damages for civil conspiracy. The defendants individually and as representatives of certain associations moved to strike, for a better bill of particulars and demurred to the declaration. The motions were denied and the demurrers were overruled. Petitioners seek a review of these orders by certiorari.

At the threshold we are at face with the question of whether or not an order of the circuit court overruling a

demurrer to a declaration in a common law action can be reviewed by certiorari.

There is no hard and fast rule governing the use of certiorari. Because of Sections 59.01, 59.02, 59.04 and 59.05, Florida Statutes of 1941, we have limited the review of orders in common law actions to the final judgment and require that it be brought up by appeal (but formerly by writ of error). It is also settled that we will not entertain certiorari as a substitute for appeal or writ of error, nor will we entertain it if the remedy by appeal or writ of error is plain, speedy, and adequate. If however, the writ of error or appeal is shown to be inadequate or the trial court is shown to have gone contrary to the essential requirements of law or any order he makes requires a departure from substantial legal requirements, certiorari may be employed to correct him.

Review by certiorari has been repeatedly enlarged in this State, the latest instance being provision to review interlocutory decrees in equity as provided by Rule 34 of the Rules of this Court. We have made no specific provision to review interlocutory orders in common law cases by certiorari but we have many times reviewed such orders in this manner. Ulsch v. Mountain City Mill Co., 103 Fla. 932, 138 So. 483; Midland Motor Car Company v. Willys-Overland, Inc., 101 Fla. 837, 132 So. 692; Kilgore v. Bird, et al., 149 Fla. 570, 6 So. (2nd) 541; Bloomhuff v. Miami Jockey Club, 150 Fla. 411, 7 So. (2nd) 447.

These cases are different from the case at bar in that they involve instances in which the trial court proceeded contrary to the essential requirements of law or departed from substantial legal requirements, and review by certiorari was employed as a corrective. A study of the text books in connection with these and a multitude of other cases reveals the generally accepted doctrine that certiorari is at all times a discretionary writ and may be employed in any case where appeal or writ of error is not adequate or for other reasons the ends of justice will be prompted by its use.

The object for which certiorari is sought in this case is to test the sufficiency of a declaration in civil conspiracy. We are in other words importuned to review an interlocutory

order in a common law case by certiorari. It is true that the writ has not previously been employed for this purpose but that is no reason for denying it here. Rules for enforcing the law should be equal to the remedies provided by it and Section 25.03(5), Florida Statutes of 1941, lays the burden on this Court of expanding them to meet that standard.

In my view, this is a case in which the ends of justice will be prompted by granting the writ of certiorari for the purpose of concluding the question of the sufficiency of the declaration. This is a pure legal question and I assume that the declaration is as strong as it can be made, if it is bad, the case fails. The plaintiff is seeking to recover damages from sixteen defendants, some of them individually and some of them in a representative capacity. The acts charged as constituting the conspiracy are many and complex and will present many difficult and devious situations. A large volume of evidence will be necessitated and in the event of an appeal to this Court by either party thousands of dollars of expense will necessarily be incurred. It would be a travesty on justice to require this to be done and then on appeal from final judgment dispose of the case on the ground that the declaration failed to state a cause of action. Any appeal that imposes such a burden on litigants is inadequate.

In reaching this conclusion we do not for once recede from the postulate that litigation must be conducted and justice administered by rule. Neither do I forget the professional element as distinguished from the commercial. At the same time, rules of procedure should be so flexible that bona fide litigants may adjudicate their controversies and not find themselves in the predicament of that certain man that went down from Jerusalem to Jericho when they got through. Rigid application of rules of procedure is a species of blind legalism that often leads to the defeat of justice when if reason and common sense had been substituted a righteous judgment would always follow.

Whether we realize it or not the administration of justice in this country has entered a new era. The world has been marvelously contracted and the causes that give rise to litigation at the present are as different from those that produced

it in the last generation as the methods of communication typical of the two periods are different. The demand for dispatch and efficiency in litigating causes is as urgent as it is in the conduct of business. Much of the litigation appearing in the courts now is of a character that if conducted by the methods of the last generation every court in the country would be scrapped. The administration of justice in a democracy like ours must respond to the purpose of its creation if public confidence in it is to be retained. To the practical American efficiency in judicial administration means justice with dispatch at minimum expense. A satisfied litigant is the best advertisement a court of justice can have. Dispatch at minimum expense are the elements that satisfy and rules of procedure should be cast and construed with these factors in mind. It will keep them ample and current; it will make Section Four of the Declaration of Rights (Florida Constitution) a reality; and will retain at maximum level, public confidence in the courts.

Section Four of the Declaration of Rights guarantees to everyone injured in person, property, or reputation, a speedy remedy. Section 25.03(5), Florida Statutes of 1941, makes it the duty of this Court to provide the rules, practice, and procedure to effectuate the guarantee so provided by the Declaration of Rights. The responsibility is therefore on us to make the means for securing the remedy adequate and it is idle to contend that old rules will suffice without constant expansion to meet new situations. During the thirty-four years John Marshall was Chief Justice of the Federal Supreme Court, 1106 cases were decided, in other words a case load of about thirty-two cases per year though Marshall himself prepared the opinion in 519 of them. The early years of this Court reveal a similar case load but during the late 1920's and early 1930's, we disposed of more cases annually than the Supreme Court of the United States did during the 34 years of Marshall's tenure, and we are now disposing of more cases each two years or less, than were disposed of during the entire period of Marshall's tenure. The case at bar brings out clearly the causes for and difference in volume of litigation for the two periods. It also impresses the reason

for expanding procedural remedies to make them equal to changing conditions.

Failure of the bench and bar in alertness to this has been the main contributing cause for bringing into existence administrative and other agencies that are transacting much of the business that courts should be transacting. It has been the policy of the Legislature of Florida to require that the findings of these agencies be reviewed by the courts but there is respectable sentiment in the country advocating the removal of this safeguard and whether or not that sentiment becomes dominant depends on the diligence of the bench and bar in sensing the public demand and coming forward with better means to meet it.

So much for the question of procedure. Now let us see whether or not the declaration is sufficient to support an action for civil conspiracy.

The declaration is in two counts that are of similar content, the first charging a conspiracy to deprive the plaintiff of his right to do business and the second charging a conspiracy to obstruct the due operation of law and thereby deprive the plaintiff of his right to do business. Appellants contend that the declaration is fatally defective because it fails to charge that the act conspired to be done or the manner of its doing was unlawful.

In this brief, respondents say that they patterned their declaration after the declaration in Stewart Land Company v. Perkins, 290 Mo. 194, 234 S.W. 653; Garsed v. Sugarman, 99 Fla. 191, 126 So. 147; and Harford v. Graves, 102 Fla. 835, 136 So. 620. It is fundamental that the allegations of a declaration for civil conspiracy must charge a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means or it must allege that the confederates committed acts unlawfully, wilfully, and maliciously that resulted in injury to the plaintiff.

Carson in his work on Common Law Pleading, page 174, lists the essentials of such a declaration to be (1) Conspiracy between two or more persons to do an unlawful act or to do a lawful act by unlawful means, (2) The doing of some overt

act in pursuance of the conspiracy, and (3) Damage to the plaintiff as a result of the acts done in furtherance of the conspiracy.

The declaration in this case meets this test. It charges a conspiracy on the part of defendants to prevent the plaintiff from operating his business when and where he had a right to do so. It alleges that the defendants wilfully, maliciously, and intentionally committed unlawful acts and sets out in detail in what these acts consisted. It concludes with the allegation of general, special, and punitive damages as a result of the conspiracy.

The authorities generally hold that it matters not by what name it may be called, any combination or agreement will be considered an unlawful conspiracy if it commits acts which injure or destroy the trade, business, or occupation of another. The cases last cited and a number of others support this view. Defendants contend that the declaration does not allege that they conspired to commit an unlawful act. It may be admitted that taken in the abstract the acts charged are not unlawful but the test is whether or not they were done with malice and resulted in damage to the plaintiff. In my view the declaration meets this test and conforms to the statute, Section 833.01, Florida Statutes of 1941. See also the Law of Conspiracy by Harrison.

I think the order of the majority is wrong. It imposes an impediment on the administration of justice that makes the process ridiculous to litigants who resort to the courts in good faith to have their controversies adjudicated. It begets a lack of faith and confidence in the efficiency of courts that they should not be required to bear.

I therefore dissent and am authorized to say that Mr. Chief Justice BUFORD and Mr. Justice CHAPMAN concur in this view.

CHAPMAN, J., dissenting:

Challenged here by petition for a writ of certiorari is an order of the lower court in a common law case sustaining a declaration seeking damages for civil conspiracy. Ordinarily such matters are heard here by writ of error taken to a final

judgment. Counsel for the litigants request us to rule on the order *now* because of its transcendent importance to the parties litigant, counsel, and the community interested. Emphasis is placed on labor, time, industry, and money of the litigants which may be saved, and excluded will be vexations, anxiety, and worries of the parties incident to the litigation. The only controversy presented is the method of review on the part of this Court.

Precedents, written or enunciated by judges fifty, seventy-five or one hundred years ago, it is suggested, should control the point in controversy, although these venerable men are not now among us or acquainted with our everyday problems but have rested serenely in their graves for many decades but now appear at this hour to wield an unexplainable influence on the method of reasoning on the part of some of us taking their places on this Court. The lustre and greatness of the able jurists promulgating these presents are not questioned. They served well, labored faithfully, and conscientiously interpreted the law in light of their day and generation, and have passed to their reward.

The fundamental right of construing or interpreting our law in the light of present day conditions and surroundings should be accorded the present generation and not be bound by the clumsy procedure of the past. The march of time suggests to all of us lawyers that we are now living in a world quite different from the one of a few years ago. We cannot remain chained to the idols of the past and simultaneously retain the respect, confidence and esteem of the men and women now in control of affairs or those coming from our schools, colleges and universities searching for truth in all matters and giving and demanding sound reasons for all conclusions reached.

The judiciary appointed from the bar, as well as the bar, cannot function and render approved service to society without the respect, confidence and esteem of the public. Ideas independent of this theory are doomed to failure. The judicial branches of our State and National governments are dominated by the lawyers. These affairs should be handled in a practical manner and results declared without unreason-

able delays. It is within our power to correct faults and errors and we are discreet if we do so in our duty and obligation to society. Substantive law is not involved but only remedial. I favor the adoption of a rule, statute or decision authorizing the requested procedure, with defined limitations, so that we may render more adequate and effective service to the people of Florida.