**LAPUYADE et al. v. PACIFIC EMPLOYERS INS. CO.**

No. 14009.

United States Court of Appeals Fifth Circuit.

March 20, 1953.

Rehearing Denied May 6, 1953.

Robt. A. Ainsworth, Jr., Ainsworth & Ainsworth, New Orleans, La., for appellants.

St. Clair Adams, Jr., Adams & Reese, New Orleans, La., for appellee.

Before HUTCHESON, Chief Judge, and STRUM and RIVES, Circuit Judges.

STRUM, Circuit Judge.

This is an action to recover for the alleged wrongful death of plaintiffs' infant son, 14 months old, which occurred when run over by a truck operated by an employee of defendant's assured near the intersection of Canal and North Rampart Streets, one of the busiest intersections in the city of New Orleans.[1]

There was a verdict below for plaintiffs, which the trial judge set aside and entered judgment *non-obstante veredicto* for the defendant on its motion for directed verdict which had previously been taken under advisement. This appeal is from that judgment.

[1] At the point here involved, Canal Street runs in a southeast-northwest direction. For the purpose of here indicating directions, however, we will assume that Canal Street runs east and west and that Rampart Street, which crosses it at right angles, runs north and south.

The accident occurred on the north or "lower" side of Canal Street, about 40 feet east of the east pedestrian lane at the intersection of Canal and North Rampart. At that point, Canal Street has an overall width of approximately 128 feet between outside curbs. Along each outer side of Canal Street is a paved strip 35 feet wide which is designed for three but will accommodate four lines of cars. In the center of the street, separating the two paved strips, is a slightly raised "neutral ground," approximately 58 feet wide, along which runs four street car tracks at that point. Each of said 35 foot paved strips is virtually a street within itself, one serving east or in-bound traffic, the other west or out-bound traffic. We are here concerned with the latter.

About 3:30 p.m., on April 4, 1950, one of the plaintiffs, Mrs. Dargis, was waiting for a street car in front of a store on the north or "lower" side of Canal Street, just east of North Rampart. It was raining at the time. She saw a line of three west bound street cars standing on the neutral ground, stopped for a red light at the Rampart Street intersection, the last of which street cars she desired to board. West bound vehicular traffic on Canal Street was also stopped for the same traffic light, which was red toward Canal Street traffic.

Mrs. Dargis was then about 40 feet east of the pedestrian cross walk on the north side of Canal Street. She stepped off the side walk and started threading her way through traffic across the 35 foot paved strip, toward the third street car standing on the neutral ground. She was "in a hurry," but did not run. She was holding her 14 months old infant in her arms. Her husband's eight year old niece, holding on to Mrs. Dargis' skirt, was walking closely behind her. Mrs. Dargis safely negotiated her way through three lanes of vehicular traffic standing on Canal Street, and came to the fourth lane, nearest to the neutral ground, which appeared to be open and clear in both directions from the point where Mrs. Dargis was crossing. She looked up and down the clear traffic lane, saw nothing, and started across, when she was struck by the right front fender of the truck in question. The impact spun her around, causing her to drop her baby, which was run over by the right front wheel of the truck, with fatal result. The little niece, however, saw the truck coming, stepped back into the third lane of standing traffic, and escaped uninjured.

The brakes of the truck were tested by a city employee immediately after the accident, and found in good mechanical condition. The driver stopped the truck within six or seven feet after striking Mrs. Dargis, and before the rear wheel reached the infant's body on the pavement.

The truck was traveling at the rate of 10 to 15 miles per hour, approaching the North Rampart street crossing, where it would have been stopped by the red traffic light. There is no evidence that the truck was not under control, although there is some evidence that it swerved slightly when the driver suddenly applied the brakes, so that it came close to striking a taxi standing in the adjoining traffic lane. The truck driver was experienced, and familiar with the intersection. He testified that he was coming down the fourth or inner lane, nearest to the neutral ground, headed west, running about 10 to 15 miles per hour; that he had a clear lane all the way to the Rampart Street intersection, and that suddenly a lady ran out with a baby from between the two cars in the adjoining or third line of traffic; that "she was leaning over, the rain was falling, and just when he saw her she ran into his truck." The windshield wiper on the left side of the truck was in operation.

Mrs. Dargis testified that she crossed east of the traffic lane because the red traffic light was on at the intersection; it was raining; and she could "get right in the door of the street car" at the point where she was crossing. She said she had taken a step, or a step and a half, into the fourth or inner traffic lane, next to the neutral ground, when she was struck by the truck.

■ We agree with the trial judge that there was no negligence on the part of the truck driver, and that the injuries were caused solely by the negligence of Mrs. Dargis in stepping from between the two

stopped cars in the third lane of traffic, and directly into the path of the truck in the fourth lane, at a point 40 feet away from the path marked out for pedestrians to cross at the intersection. See the cases hereinafter cited.

■ In addition to the facts already stated, Mrs. Dargis was in violation of Art. IV(4) of New Orleans traffic ordinance No. 13702, which provides: "Pedestrians shall cross streets only at street intersections or cross walks * * *," and of Art. IV(2–c) of the same ordinance which provides: "Every pedestrian crossing a roadway at any point other than within a marked, or unmarked cross walk shall yield the right of way to vehicles upon the roadway." Violation of a traffic ordinance in this manner is contributory negligence when such violation is the proximate cause of the injury.[2] Sun Oil Co. v. Gregory, 5 Cir., 56 F.2d 108; Allen v. Hooper, 126 Fla. 458, 171 So. 513.

■■ Plaintiffs rely on the doctrine of last clear chance, or discovered peril, under which a negligent plaintiff may recover from a negligent defendant if the latter discovered, or in the exercise of reasonable diligence could have discovered, plaintiff's peril in time to avoid the injury, and thus has in fact a later chance than plaintiff to avert the accident. Rottman v. Beverly, 183 La. 947, 165 So. 153; Barnes v. Texas & N. O. R. Co., La.App., 16 So.2d 600; Kansas City S. Ry. Co. v. Ellzey, 275 U.S. 236, 48 S.Ct. 80, 72 L.Ed. 259; Grand Trunk Ry. Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485. This doctrine does not apply, however, unless the defendant discovered, or should have discovered, plaintiff's peril in time to prevent the injury by exercising ordinary care. Gauthier v. Foote, La.App., 12 So.2d 9; Rainwater v. Boatright, La.App., 61 So.2d 212; Fontenot v. Freudenstein, La.App., 199 So. 677; Heydorn v. New Orleans Pub. Serv., La. App., 35 So.2d 893; Kinney v. Chicago Great Western R. Co., 8 Cir., 17 F.2d 708; Walker v. East St. Louis & S. Ry. Co., 8 Cir., 25 F.2d 579.

By her own testimony Mrs. Dargis, while weaving her way through traffic from the side walk toward the neutral ground at this very busy intersection when traffic was heavy, stepped into the fourth or inner traffic lane from between two cars standing in the third lane, and "took one or one and a half steps" into the fourth lane when she was struck by the truck. She was 40 feet away from the pedestrian cross walk, endeavoring to escape the rain and catch the street car before the traffic light changed.

■ It is undisputed that the truck was approaching at about 10 to 15 miles per hour, a speed permitted by the New Orleans traffic ordinance above mentioned, preparing to stop in about 40 feet at the Rampart Street traffic light. The truck driver did not, and could not, see Mrs. Dargis until she stepped from between the two standing cars in the third lane of traffic and into the fourth lane in which the truck was approaching. While Mrs. Dargis took "one or one and a half steps" was not time enough, in the circumstances, for the driver of a vehicle close at hand, to discover her peril and stop a truck traveling 10 to 15 miles per hour, even though the driver knew that at this intersection pedestrians sometimes cross outside the cross walk in order to catch a street car. For the reasons just stated, the doctrine of last clear chance is inapplicable here. Williams v. Lykes Bros. S. S. Co., 12 La.App. 127, 125 So. 153; Rodriguez v. Abadie, La.App., 168 So. 515; Gauthier v. Foote, La.App., 12 So. 2d 299; Bailey v. Reggie, La.App., 22 So. 2d 698; Martin v. American H. & P. Co., La.App., 52 So.2d 93. Compare Schoen v. Western Union Tel. Co., 5 Cir., 135 F.2d 967; Humphries v. Boersma, 5 Cir., 190 F.2d 843; Standard Oil Co. of Ky. v. Noakes, 6 Cir., 59 F.2d 897; note, 79 A.L.R. text 1095. Evidence that the truck swerved slightly when the brakes were suddenly applied in an emergency does not of itself establish negligence on the part of the truck driver. Rodriguez v. Abadie, La.App., supra.

2. We note that the ordinance also provides, Art. IV(2–d), that the provisions just quoted shall not relieve the driver of a vehicle 'or the pedestrian' from the duty to exercise due care.

We have examined Hanson v. Great Am. Indem. Co., La.App., 33 So.2d 549, 552; Jackson v. Cook, 189 La. 860, 181 So. 195; Paquet v. Renken, La.App., 30 So.2d 218, 220, and like cases relied on by plaintiffs. These cases appear to hold that under the Louisiana discovered peril rule the driver of a vehicle involved in a collision is chargeable not only with what he actually sees, but also with what he could and should have seen by the exercise of due diligence, even though the peril was created initially by the negligence of the other party to the collision. This is usually recognized as an element of the last clear chance or discovered peril doctrine. Assuming that to be the rule, we hold that the conduct of this driver satisfies that test in the circumstances here presented. We notice, parenthetically, that there is some apparent difference of opinion in Louisiana as to the above mentioned element of the rule. See Davidson v. American Drug Stores, La.App., 175 So. 157.

■ As Mrs. Dargis, at the time of the accident, was returning home after a shopping mission to purchase clothing for her baby, she was clearly engaged on a community mission, so that her contributory negligence would bar recovery as to both plaintiffs, even if there were negligence on the part of the truck driver. Levy v. New Orleans & N. E. R. R. Co., La.App., 21 So. 2d 155.

This is a tragic situation appealing strongly to sympathy, which may account for the jury's action, but the record discloses no negligence on the part of the truck driver, while it does disclose clear contributory negligence on the part of Mrs. Dargis. The trial judge was correct in rendering judgment *non-obstante* for the defendant.

Affirmed.

RIVES, Circuit Judge (dissenting).

The driver of the truck, Rodriguez, admitted on cross-examination that for seven years he had known people customarily walked across Canal Street above this intersection to catch the street cars (Record ps. 57, 58); that at the time of the accident the light at the intersection was red and traffic had stopped in all lanes other than the inside lane in which he was driving (Records ps. 52, 58); that because the cab of his truck was elevated higher he could see further than anyone riding in a passenger automobile (Record p. 62); that "traffic was heavy" (Record p. 61), the pavement was wet (Record p. 53), and there was a "pretty good drizzle" or rain falling at the time (Record p. 50); that the windshield wiper in front of the driver's seat on the left side of the truck cab was working, but he did not remember whether there was a windshield wiper on the right side of the windshield, from which direction plaintiff approached (Record p. 52), although he had previously testified on direct examination that he had driven this same truck "regularly about three or four years". (Record p. 50). The jury was not bound by his testimony that he was driving only "ten to fifteen miles an hour" at the time of the accident (Record p. 46) and moved only "about seven feet" afterwards (Record p. 60), for the photographic exhibits in evidence clearly reveal that the truck traveled fully its own length plus about eight additional feet past the point where the driver, Rodriguez, indicated the plaintiff was hit. (Record p. 60 and Exhibits.) The driver further admitted that he almost struck the side of the United Cab in front and to the right of his truck after the accident (Record p. 54) and one of the photographs reveals that he was "trying to keep from hitting the cab", as he testified (Record p. 55), by turning his front wheels toward the neutral ground before finally bringing the truck to a halt. Finally, although from his vantage point in the elevated cab of the truck Rodriguez did not see the plaintiff until she "run right into my truck" (Record p. 46), the plaintiff's eight-year old niece, Alvis, who was holding onto the back of plaintiff's dress and following her immediately before the accident, testified that she saw the truck. (Record p. 42.)

Taking into consideration all of the facts and circumstances, it seems to me that there was substantial evidence to support a finding that in the exercise of due diligence, defendant's driver should have discovered plaintiff's peril in time to avoid the injury

and death. The district judge, if he thought the verdict wrong or against the preponderance of the evidence, might grant a new trial; but when there was some substantial evidence to support the jury's verdict, neither the district judge nor this court should direct the entry of a judgment notwithstanding the verdict.

I, therefore, respectfully dissent.

Rehearing denied; RIVES, Circuit Judge, dissenting.