No. 459

First Circuit

NUNNALLY BROS. MOTOR CO. v.
INTERURBAN TRANSPORTATION CO.

(June 10, 1929. Opinion and Decree.)
(June 28, 1929. Rehearing Refused.)
(October 8, 1929. Writ of Certiorari and
Review Refused by Supreme Court.)

John B. Smullin, of Baton Rouge, attorney for plaintiff, appellee.

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for defendant, appellant.

ELLIOTT, J. Nunnally Bros. Motor Co. claims of Interurban Transportation Co., Inc., $160.35 in damages on account of a collision between an automobile belonging to them and a motor omnibus belonging to defendant. The machines of both were injured.

The collision occurred on Lafayette street, in the city of Baton Rouge, just north of its intersection with Main street, on or about June 13, 1928, at about 4 o'clock P. M. The weather was fair and nothing in that way prevented the parties from seeing up and down the street.

The plaintiff claims that due to the gross negligence, carelessness and want of skill on the part of defendant's employee, driving its motor omnibus, it ran into and damaged their automobile to the extent stated.

The defendant denies the negligence, etc., alleged against its driver, and avers that the collision was due to the negligence, lack of skill and excessive speed of plaintiff's employee, the driver of their car.

Defendant prays for the rejection of plaintiff's demand, and setting up damages to its omnibus in the collision to the extent of $121.25, prays for judgment in reconvention to that extent against the plaintiff.

There was judgment for the plaintiff as prayed for in the lower court, and the demand of the defendant was refused.

The evidence shows that plaintiff's employee had met a young lady who had arrived on a train and was taking her home. The car had passed from North into Lafayette and was going south in Lafayette street toward its intersection with Main street, intending to enter on

Main street and thence continue to the place where the young lady was going. She was seated on the front seat by the driver. The omnibus with 4 or 5 passengers aboard, had stopped on Main street in front of the Louisiana Hotel. The hotel is situated on the north side of Main and forms the corner of Main and Lafayette streets. Starting up from where it had stopped in front of the hotel, its route required it to turn out of Main, swing around the corner of the hotel, and turn north into Lafayette street. There was an automobile truck parked on Lafayette street just around the corner next to the hotel, which did not become visible to the driver of the omnibus until he had reached about opposite the Lafayette street intersection and commenced to make his turn to the right and north into Lafayette street. Lafayette is only 32 feet wide between the curbing. The omnibus was 8 feet wide and 27 feet long. The street was so narrow and the omnibus so wide and long that it was necessary for it to make a short turn or detour out into Main in entering Lafayette street. In making this turn the omnibus moved very slowly, probably less than 5 miles an hour, and under brakes, with its horn sounding. It had made the turn and was proceeding northward obliquely, getting to the right side of Lafayette street, but before it had gotten straight, plaintiff's car, coming at a rapid speed, struck the front end of the bus.

Anybody coming south on Lafayette street was bound to see this omnibus if they were looking, and to hear its horn if they had been listening.

The driver of the omnibus and several passengers seated in it, saw the Nunnally car coming towards them at a rapid speed. At the time it was first seen, the driver and some of the occupants of the omnibus estimate that it was 50 or 55 feet distant from the omnibus and in about the center of the street.

Another occupant of the omnibus says that when she first saw it, it was about a half block, or the width of three houses distant up Lafayette street, in about the center of the street.

The driver of the omnibus estimates the speed of the Nunnally car when it was first seen, at 35 or 40 miles an hour. Two of the passengers, at 25 or 30 miles an hour. One of the passengers declined to estimate the speed, but testified that it came forward rapidly and without slowing down.

The driver of plaintiff's car and the young lady with him both declare that it was going at the time, about 15 miles an hour. But the preponderance of the proof and the physical facts attending the collision justify the conclusion that plaintiff's car was probably running 25 or 30 miles an hour. This speed was too fast for the intersection it was approaching, and for getting by the omnibus in its immediate front. Not only was plaintiff's car going too fast, but its driver was not looking ahead and did not see what was in the street in front of him.

The driver of defendant's omnibus, although an employee, does not seem to be influenced by it in giving his testimony. He testified that the driver of plaintiff's car was engaged in conversation with his companion, who was seated on the front seat by his side, and that he was not noticing where he was going.

A lady witness, occupant of the omnibus, was looking at the approach of the Oakland sedan, and testified that its driver was not looking at the time. That she

saw its driver was not looking ahead toward the corner at all. That so far as she could see he was talking to his companion.

In another place this same witness, speaking of the position of the omnibus and of the view which the driver of plaintiff's car had of the omnibus, and of his failure to stop before hitting it, says that after it had turned the corner, this man, meaning the driver of plaintiff's car, could easily have seen it if he had been looking at what he was doing, and that at the distance she saw him, anybody could have stopped.

Another lady, passenger in the omnibus, says:

"My sister was sitting by my side; she said 'Look!' I looked up and saw the car coming down the street. The gentleman was driving an Oakland sedan. Just as I looked up he was looking at the lady seated by his side; they seemed to be laughing or joking. Just as I saw him he was near the bus and it looked like he saw us at the same time I saw him. The collision was right then."

She further says that just before the collision when she saw it, just a few feet distant from the omnibus, he was looking at the lady seated by him and driving rapidly. "It seems he first looked up and saw the bus as I saw him, just about the same time. Everybody in the .bus seemed to have noticed that he had not seen the bus."

Another party seated in the rear of the omnibus says, that when he first saw the driver of plaintiff's car, he was coming fast and was 20 or 25 feet distant from the omnibus looking at and talking to the young lady riding with him, and laughing. When he saw the bus he cut, but it was too late.

The testimony is convincing, that if plaintiff's car had been on the right side of the street instead of about the center, and the driver looking and watching ahead in the direction he was going, and had had his car under control, he could and would have seen the omnibus, and could have easily passed to the right of the rear end of it without striking it. There was plenty of room in the street for him to have done so, and there was nobody coming, nor other obstruction at the time.

Under the evidence, we think the demand of the plaintiff should be rejected. As for defendant's demand against the plaintiff in reconvention, the driver of its omnibus was not at fault, negligent or careless. The motor truck parked close to the corner on the east side of Lafayette street did not come into his view until he had come near to the intersection and the parked car, together with the width and length of his omnibus, made it necessary for him to enter Lafayette street several feet to the west and left of the center of the street, in order to avoid striking the parked car.

The omnibus driver pursued a proper course and was swinging and turning slowly around the parked car giving notice of his approach, moving in an oblique direction northward, getting towards the east side of Lafayette, but before he was able to get straight and entirely on the eastern side, plaintiff's car struck him.

The omnibus driver seeing the imminence of a collision, had almost come to a standstill when struck.

The fact that his omnibus was temporarily occupying and moving on a portion of the western side of Lafayette street, the left or wrong side in the direction he was going, made necessary as a result of the width and length of his vehicle and because of the space occupied by the parked car did not make him negligent. Confronted with an obstacle that required

him to do so, it was necessary for him to use a portion of the wrong side of the narrow street, until he could get around it. That is what defendant's driver was doing. As heretofore stated the fault was entirely with the plaintiff. He could not have helped seeing the slow moving omnibus if he had been looking in the direction he was going. And if he had had his car under control, he could have passed to the right of the omnibus in the direction he was going without striking it. There was plenty of room for the purpose, there was nobody coming on that side meeting him at the place, nor other obstruction to prevent his passage at the time. The collision was therefore entirely due the fault and negligence of the plaintiff and he is obliged to repair it. The item of $20.00 claimed by defendant for two days is not established, because the evidence does not show any loss sustained because of the fact that this particular vehicle was not used during that time. But the other items amounting in the aggregate to $101.25 are established and plaintiff will be required to pay same.

The judgment appealed from in favor of the plaintiff and against the defendant is erroneous. It is therefore annulled, avoided and set aside and plaintiff's demand is refused and rejected.

The judgment rejecting defendant's demand in reconvention against the plaintiff is erroneous and is annulled, avoided and set aside. And it is now ordered, adjudged and decreed that Interurban Transportation Co., Inc., have judgment against Nunnally Bros. Motor Co., a partnership and firm composed of Boyce Nunnally and C. F. Nunnally, on its demand against them in reconvention for $101.25, with legal interest thereon from June 13, 1928, until paid. The plaintiff and appellee to pay the costs in both courts.