McBRIDE, Judge.
Joseph Martin sued the owners of an automobile-truck, and their liability insurance carrier, for $52,880 for personal injuries which he alleged he sustained when run down by the truck, on July 3, 1947, at 8:30 o’clock, a. m., about midway of the lower or lake side of the 800 block of South Peters Street in New Orleans. The only defendant served was the insurance carrier, The Fidelity and Casualty Company of New York, and the suit was prosecuted solely against said defendant. After the case was heard on the merits, there was judgment in favor of defendant dismissing plaintiff’s suit, from which plaintiff appeals.
The plaintiff’s testimony, in substance, followed the allegations of his petition. He was employed as the operator of an automobile-truck by a local trucking company, and on the morning of July 3, 1947, around 8:30 o’clock, he drove to a wholesale drug establishment located at 819 South Peters Street, where he was to “pick up” some merchandise. Upon arrival, Martin found that there was a truck parked in the driveway leading from the street to the premises of the drug company, by which trucks entered the establishment for loading and unloading of merchandise. Plaintiff therefore parked his truck in the street facing uptown, parallel to the lake side curb.
According to Martin, while awaiting the departure of the other truck, he entered the drug concern, and when, the truck left, Martin walked down the driveway, around the back of his truck, and out, into the street. There is no dispute regarding the above facts, but the evidence conflicts as to what happened afterward.
Plaintiff insists that after passing around the rear end of his truck, he turned right (in an uptown direction), -and walked along the street side of his truck, so that he could reach the driver’s seat and maneuver the truck into the driveway. After stopping momentarily to look at his left rear tire, which he tested for pressure by kicking it once or twice, Martin claims that he then proceeded to the truckls cab, and something hit him just as he placed his right hand on the door handle. There is no dispute that plaintiff was struck by a truck of the American Heating & Plumbing Company, driven by its employee during the course and scope of his employment, but which plaintiff did not see. The only eyewitness account of the accident was given by the driver of the truck.
Plaintiff produced Frank Booker, his •coemployee, who testified that he neither saw the accident nor noticed plaintiff’s position as he lay in the street afterward. Booker’s only material contribution to the case was his statement that after the accident he observed that the cab door was open “a little,” which detail is of no importance, for it may be that when Martin alighted from the cab he neglected to securely close it.
Smith Peters Street, at the point of the accident, is about forty feet wide. The 800 block is located in a heavily congested commercial and industrial section of the city, where' there is a heavy flow of vehicular traffic on week days, which was particularly true at the time of the accident. Vehicles were parked on the river side of the street against the curb at a forty-five degree angle, and also on the lake side parallel to the curb. The American Heating & Plumbing Company truck was driven by Iris Manuel, who testified that he entered South Peters Street from Joseph, which is the street above number 819, and *95 proceeded downtown in the right-hand traffic lane immediately behind a tractor which was pulling a chain of small cotton trucks, which were referred to by the witnesses as “dinkies.” After traveling about a quarter of a block, the tractor stopped behind a large truck parked near the middle of the block, which occasioned a stoppage of the movement of traffic going downtown. Manuel claims that the driver of the tractor signaled for following traffic to go around the cotton trucks and pass them by way of the left lane, and Manuel, after ascertaining that the path was clear, swung into the left lane and continued onward at a speed of between 10 and 15 miles an hour. Uncontradicted testimony establishes that the clearance on each side of the American Heating & Plumbing Company truck was about two feet as it passed Martin’s truck.
Manuel’s testimony sharply contradicts and is diametrically opposed to the statements made by plaintiff. He emphatically stated that without any warning whatever, Martin stepped from behind the parked truck directly into the side of the American Heating & Plumbing Company truck, and was struck by its wing. Manuel claims that just as his cab passed by Martin, the latter was so close that he could have reached out and touched Martin’s face. He claims that he had no knowledge of Martin’s presence until he emerged from behind the parked truck.
Plaintiff’s testimony in some other respects seems -to be challenged. Martin’s statement that his truck had not been loaded when the accident happened is sharply disputed by a Mr. Bernard, the shipping clerk of the drug company, who testified that the load had been placed into Martin’s truck, and that when Martin walked out of the drug establishment he had the dray receipt of bill of lading in his hand. This testimony, of course, of itself seems unimportant, and we make mention of it here only to show that in a second particular Martin’s testimony was contradicted. Still another variance engages our attention. Martin stated that the tarpaulin supplied him for use as a cover for his truck was not being utilized at the time' of the accident, while Manuel was sure that it was unrolled and rested upon the 3½ feet high stakes on the truck and acted as a cover.
A statement made by Martin a few days after the accident gives an entirely different version of the occurrence and seems to substantially accord with the testimony of Manuel. Herman A. Clark, who is a claim adjuster for The Fidelity & Casualty Company of New York, testified that on July 11, 1947, Martin, who evidently was confused as to which insurance company he wanted to interview, appeared at his office at 610 American Bank Building, seeking to obtain workman’s compensation, and was told by Clark that his company had nothing whatever to do with liability for workman’s compensation. At any rate, Martin remained and discussed the merits of the accident, and at Clark’s suggestion gave a statement, which Clark reduced to writing, and to which Martin affixed his mark, setting forth the version of the accident which Martin recited’. In the statement, which is to be found in the record, Martin had this to say: that he “walked off the banquette or curb to the rear of my truck and I looked to the left and didn’t see anything coming towards me and 1 stepped out from behind my truck. As I stepped out from behind my truck I was hit * *
Although plaintiff insisted that he cautiously stepped from behind his truck, he admitted that he did not look towards uptown and never at any time saw, heard, or knew of the approach of the truck of the American Heating & Plumbing Company. His explanation for not looking uptown is that he did not expect downtown bound traffic to be present in the left lane.
We are inclined to the belief, as was the trial judge, that Martin paid not the slightest attention to traffic conditions in South Peters Street, but emerged heedlesssly from, behind his truck without looking at all. Had he looked, as prudence and caution would dictate, he surely could have made himself well acquainted with traffic conditions before stepping out into the. street. But, even if we accept Martin’s version of the accident as true, when he turned right and' faced uptown, and walked along the *96 length, of the truck to the door of the cab, he certainly could and should have seen the approaching truck.
Martin was found lying on the pavement two or three feet behind his truck, with his feet pointing toward the sidewalk and with about twelve inches of his body extending into the street beyond the left side of his truck. His position eloquently demonstrates that no credence should be attached to his testimony. There was only a two-foot clearance between the side of the parked vehicle and the American Heating & Plumbing Company truck, and it seems to us that if Martin had been standing at the cab’s door he would have been caught within this two-foot area, and it would have been well nigh improbable, if not impossible, for his body, after the accident, to come to rest on the pavement at the place described by the witnesses. It occurs to us that had the impact taken place at the cab door, Martin, instead of being thrown behind the truckj would have been crushed and mángled between the two vehicles. . .
After carefully sifting the contents of the record, we fail to perceive any manifest error in any respect in the judgment appealed' from. The case hinges largely on a question of' fact, and much weight should be accredited to the findings of the trial judge, who saw and heard the witnesses testify and who had the opportunity of noting their demeanor on the witness stand. In addition, the judge visited and made a visual inspection of the •.scene of the accident. Indeed, in his written reasons for judgment — and we quite :agree with his sentiments — he stated: “I am not impressed with the story of Martin. The accident just could not have happened as he stated that it did.”
Plaintiff’s counsel devoted much of their argument to the contention that the •driver of the American Heating & Plumbing Company truck was negligent in driving on the left side of the street at a speed of between 10 and 15 miles an hour, and .further that, considering the circumstance •of the crowded condition of South Peters Street, the driver should have constantly bounded his'horn -while proceeding in the •improper lane. Counsel attribute the accident to the above two charges of negligence, and cite several cases which they say are controlling, in which plaintiffs were allowed to recover damages from motorists who operated their vehicles on the left side- of the roadway. We have very carefully read each of the cited cases, and find that none have any applicability here, because of. factual differences. For instance, in Kelly v. Schmidt & Zeigler, 142 La. 91, 76 So. 250, the driver of the automobile-truck could have seen, but did not see, the boy who was injured, and for that reason the court convicted the motorist of negligence. In Keller v. Stevenson, La.App., 6 So.2d 569, the motorist was held liable because of not having kept a proper lookout. The plaintiff, in Wall v. Aetna Casualty & Surety Co., La.App., 167 So. 903, was standing in the roadway and could easily have been seen, and because of the driver’s failure to avoid striking her, the court held him negligent and awarded damages to plaintiff. In Weinfield v. Yellow Cab Co., 10 La.App. 313, 120 So. 420, decided by this court, the driver was operating his vehicle in violation of city ordinances at 25 miles an hour on the wrong side of a street, congested with traffic because of the proximity of a carnival parade, and was held guilty of negligence for running down a pedestrian.
We know of.no law which requires a motorist driving on the left side of a roadway to constantly sound his horn. It cannot be gainsaid that a motorist who drives on the left side of the roadway should be held to a somewhat higher degree of care than the operator of a vehicle which is moving in the proper lane. But in the case before us, we cannot say that Manuel, driving as he was, is to be held negligent. We are unwilling to say that one driving a vehicle in the left lane, or that one so driving a vehicle at a speed of between 10 and 15 miles an hour, is to be deemed guilty of negligence per se.
The only limitation placed on driving on the left side of a highway prescribed by the traffic ordinances of the City of New Orleans, is to be found expressed in Article V, § 13, of Ordinance No. 13,702, C.C.S. So far as pertinent here, the section provides that a motorist shall not drive on the *97 left side of the center line of a highway in ' overtaking or passing another vehicle proceeding in the same direction, unless said left side of the highway is clearly visible and is free from oncoming traffic for a sufficient distance ahead to permit the maneuver of overtaking or passing the other vehicle.
Our brothers of the first circuit, in Munnally Bros. Motor Co. v. Interurban Transp. Co., 11 La.App. 395, 122 So. 876, 877, in commenting on'the defendant’s driver having been .traveling on the left side of the roadway at the time of the accident, remarked: “* * * Confronted with an obstacle that required him to do so, it was necessary for him to use a portion of the wrong side of the narrow street until he could get around it. * * * ”
We are cited by defendant’s council to two cases, decided by us, which involved charges of negligence against motorists who operated their automobiles on the left side of the roadway.
In Peters v. Crescent Forwarding & Transp. Co., 14 La.App. 573, 130 So. 367, we allowed plaintiff to recover for damages to his automobile, although he was driving on the left side of the roadway. In discussing the contention that plaintiff was negligent in so operating his vehicle, we said: “It appears, however, that another vehicle, proceeding in the same direction in which plaintiff’s car was going, was the cause of its being on the left side of the roadway, and we believe, from the evidence, that it was the intention of plaintiff’s chauffeur to pass the other vehicle, which he was justified in doing, since the speed of the other vehicle was moderate.”
The case of Perret v. Geraci, 15 La.App. 329, 131 So. 72, involved a suit for personal injuries sustained by a plaintiff. 'He contended that defendant was negligent in operating a vehicle on the wrong side of the roadway. In the course of our opinion, we said: “ * * * That defendant’s car may not have been approaching on the proper side of the roadway is of no great importance, since, even if it were negligence to drive anywhere except along the right side of a road, which is manifestly not so, still, plaintiff’s contributory negligence in stepping into the roadway without looking would bar his recovery. Bass v. Means, 12 La.App. 260, 124 So. 553; Neville v. Postal Telegraph Cable Co., 13 La.App. 76, 126 So. 720.”
Our jurisprudence is well settled to the effect that where a pedestrian of normal intelligence and possessing normal senses of sight and hearing suddenly appears from behind a parked vehicle and enters the roadway, without looking to see if any traffic is coming, he. is guilty of negligence. Perret v. Geraci, supra; Williams v. Lykes Bros. S. S. Co., 12 La.App. 127, 125 So. 153; Bailey v. Reggie, La.App., 22 So.2d 698.
As 'the judgment dismissing the main demand is to 'be affirmed, it follows that the intervention herein filed by the Liberty Mutual Insurance Company must also fall. The intervenor, which carried the workmen’s compensation insurance liability for the employer of Martin, sought to recover the amount paid to Martin. The intervention ' was dismissed,' but the intervenor preserved its rights by having answered this appeal praying that in the évent plaintiff was awarded damages, it should be reimbursed for the compensation and medical expenses paid.
For the reasons hereinabove stated, the judgment appealed from be and it is hereby affirmed.
Affirmed.