JONES, Judge.
Defendants prosecute this appeal from a judgment of the District Court awarding damages to the plaintiff for and on behalf of himself and his minor son as a result of personal injuries incurred by the minor son in a collision between a motor bike ridden by the son and an automobile driven by the defendant Carber. The other defendant, Fidelity and Casualty Company of New York, was the liability insurer of defendant Carber. Plaintiff has answered the appeal seeking an increase in the amount of the award.
The accident from which this suit resulted occurred on the 28th day of March, 1958, at the hour of 7:30 P.M., in the Parish of East Baton Rouge, on what is known as the Hooper Road. This road runs in an easterly-westerly direction, is 21 feet wide and has a blacktopped surface. Immediately prior to the accident, the plaintiff’s son, Darryl, age 14, rode his motor bike from his father’s store, south of the Hooper Road, into said road, at which time he observed the lights of the Carber car proceeding west on said road and toward him at a distance of about 900 feet. The young man proceeded on into Hooper Road, turning west thereon, with the intention of going to the residence of Mr. Brumfield, a distance down the road of 983 feet. Thus, the motor bike he was riding and the car driven by Carber were traveling in the same direction, or westerly, on Hooper Road. When the vehicles reached a point approximately 80 feet southeast of the Brumfield driveway, a collision occurred on the south shoulder of the road resulting in rather serious injuries to the minor Darryl Andrews.
Defendants contend that the trial judge committed error in reaching the conclusion that Carber, the driver of the automobile, was guilty of negligence which was the proximate cause of the accident for the reason that he was engaged in passing the motor bike at the time of the accident and that Darryl Andrews gave a signal to turn left at a time when it was impossible for Carber to do anything but turn left with the motor bike, subsequently striking it on the shoulder of the road; further, that Darryl Andrews was at least guilty of contributory negligence which had been pled *462 and the trial judge was in error in not so holding; further, that the trial judge was in error in holding that Carber, upon initially seeing the motor bike driven by Andrews, should have brought his car under control so as to avoid the resultant certain accident in the event the driver of the motor bike should attempt to execute a left turn.
It is the contention of the plaintiff that the trial judge was correct in holding Car-ber liable for the reason that immediately prior to the accident Carber was driving at an excessive rate of speed, under the circumstances, immediately behind the motor bike and on the same side of the road, or proper lane of travel for both of them, when the boy on the motor bike extended his arm for a left turn and when he looked around the Carber car was so close behind him he could do nothing but cut sharply to the left to avoid the accident.
It is noted from the written reasons for judgment that the judge did hold in one paragraph of the opinion that it was negligence on the part of the driver Carber not to have brought his car under control in order to avoid the certain accident in the event the driver of the motor bike should attempt to execute a left turn. However, in the very next paragraph of the reasons for judgment, the court stated that a person proceeding on a highway was not required to anticipate that one proceeding in front of him was going to make a left turn. The latter expression by the court is, of course, the law, and we believe the former statement was inadvertently made. However, be that as it may, this case presents strictly a factual situation and the trial court has resolved the facts in favor of the plaintiff and his conclusion should not be altered unless manifestly erroneous. Martin v. American Heating & Plumbing Co., La.App., 52 So.2d 93; Ceaser v. Calcasieu Paper Co., Inc., La.App., 102 So.2d 314.
The evidence shows that at the time of the accident the blacktopped road was wet, it was drizzling rain and that Carber was operating his automobile at a rate of speed of between 50 and 55 miles per hour. When he reached a point about 100 feet west of where young Andrews had entered the highway, which was approximately 800 feet from where the accident occurred, he became cognizant that the motor bike was traveling ahead of him and he did not reduce his speed. There is considerable conflict in the testimony as to how far Carber was from the motor bike when he saw the Andrews youth extend his left arm indicating that he intended making a left turn.
Sergeant Edwards, a highway policeman, who investigated the accident about 20 minutes after it occurred, testified that Carber told him at that time that when he saw the boy give the left turn signal he was about 200 feet from him but he thought he would go ahead and pass him before the boy started his turn. This witness further testified that Carber stated he was going 55 miles per hour and realized when he was about 150 feet from the boy that an accident was imminent.
Scallan E. Walsh, First Assistant District Attorney for the Parish of East Baton Rouge, testified that he prosecuted defendant Carber for operating a motor vehicle in a criminally negligent and reckless manner and that Carber testified in the criminal case that on the night of the accident he was traveling on the Hooper Road and saw a little boy riding on a motorcycle in front of him; that the boy was on the right-hand side of the highway ahead of him; that he was following on the right-hand side; that, as the boy approached a private driveway, he gave a signal indicating he was going to make a left-hand turn; and, that, seeing the boy was a considerable distance from the private driveway, he, Carber, pulled out to the left and speeded up to pass the boy before he got to the driveway and, when he was in the act of passing, the boy cut across the road before reaching said private driveway, resulting in his being hit.
Defendant Carber testified that he saw the taillights from the motor bike when he was about 700 feet east of it but that he was *463 only 200 feet east of the Brumfield driveway when he saw Darryl Andrews and 100 feet behind the motor bike and in the western travel lane when he saw Darryl Andrews give a signal to make a left turn. He denied that he had told Sergeant Edwards, the highway policeman, that he was 200 feet behind the motor bike when the left turn signal was given. He further denied that he made the statement in the criminal case as attributed to him by the witness Walsh. He further denied statements which were testified to by other witnesses to the effect that if he had stayed on the right side of the road instead of cutting to the left the accident would not have happened.
From the testimony above commented upon, it is apparent that the trial judge accepted the testimony of both Trooper Edwards and Mr. Walsh in relation to where the Carber car was immediately prior to the accident for we note in his reasons for judgment he stated that when Carber “reached a point some 200 feet behind the motorbike young Andrews gave a signal by extending his arm to turn left but at that time Mr. Carber felt that he would execute the movement of passing the motorbike and he did not apply the brakes on his car but proceeded at the rate of speed previously given, and that when Andrews began the movement of making his turn he then realized the precarious situation that Andrews was in and applied his brakes, skidding some 121 feet and veering into the ditch in an effort to avoid striking Andrews.” (Italics ours.)
The Andrews boy testified that he was on his side of the road and was giving a left-hand signal and saw a bright light on his arm. (This is probably when Carber blinked his lights from dim to bright.) Young Andrews further testified he turned around when he gave the signal and saw the lights and knew there was going to be trouble so he tried to get out of the way and he went ahead and tried to make his turn into the ditch just to get out of the way. While he stated he had time to make the left turn when he gave the signal, it is apparent that he did not attempt to do so but he only turned left when he realized the car was immediately behind him.
Of course, the position of the defendant’s car immediately prior to the time that Darryl Andrews made the left turn across the road is very important in reaching a proper conclusion in this case. If it was in the southern or eastbound lane of travel and attempting to pass when the left turn was made, then Darryl Andrews would be guilty of negligence in making the turn in front of it. However, if the Carber car was in the northern or westbound lane of travel and immediately behind Darryl when he made the left turn signal and looked around and saw it there, then there was nothing else for him to do but to turn to the left in an effort to get out of the way. The District Judge undoubtedly accepted the latter view and as a result thereof permitted recovery by the plaintiff. In doing so, we cannot say that he has committed manifest error because we are of the opinion that both Sergeant Edwards, the highway policeman, and Assistant District Attorney Walsh were impartial witnesses. The testimony of the former is to the effect that Carber stated to him he was traveling 55 miles per hour when he was only 200 feet from the motor bike and at that time the left turn signal was given by the Andrews boy; and the testimony of the latter is to the effect that Carber testified in the criminal case that he was traveling on the northern side of the highway, or the same side as the motor bike, when the left turn signal was given. On this score we note in the record the testimony of plaintiff (corroborated by that of W. J. Brumfield and W. W. Hubbs) to the effect defendant was in the right or westbound traffic lane when he applied his brakes as evidenced by a skid mark made by the left wheel of defendant’s car, which said skid mark commenced on or slightly to the right of the center line of the highway and was traced by said witnesses from its beginning to the point where it left the traveled portion of *464 the highway. Thus, it is apparent that Car-ber was guilty of negligence which was the proximate cause of the accident because he was driving at a rate of speed of 55 miles per hour on a dark night, while it was drizzling, on a blacktopped road. He continued to drive at this rate of speed until he was within 200 feet of the motor bike and with such speed and the wet condition of the road he could not have stopped the car if the boy had stayed on the right-hand side of said road. He, therefore, created an emergency and there was nothing else for young Andrews to do but to cut suddenly to the left to attempt to get out of his way. It is apparent that the boy was not making this abrupt turn to go into the Brumfield driveway because he was 100 feet east of the driveway when he made the sudden turn.
There are many cases in the jurisprudence of this state holding that a driver making a left turn is responsible in damages for an ensuing accident, and there can be no question but that under the statutory law of this state LSA-R.S. 32:236 and 237, a driver on a public highway turning into a private road must yield the right of way to vehicles thereon and before making a left turn he shall not only see that it can be made in safety but shall give a signal, as required by the statute, of his intention to make such movement. However, on the other hand, it is further the statutory law of this state that a motor vehicle shall not follow another vehicle any closer than is reasonable and pertinent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway. LSA-R.S. 32:234.
There are also many cases holding that the driver of the following vehicle is negligent under the provisions of the last-quoted statute. Each and every fact must be carefully analyzed in order to determine liability in cases of this character. After such careful analysis in the present case, we cannot say that the District Court was manifestly erroneous in reaching the conclusion that the negligence of the defendant Carber was the sole and proximate cause of the accident.
An award of $5,000 was made to the plaintiff on behalf of his minor son. This sum was made up of the personal injuries occasioned the boy as well as the value of the motor bike, which was $216.86. There was likewise an award of $1,956.85 made up of special damages including doctor, hospital and other medical bills.
There is no question but that the boy experienced considerable pain. Dr. Donahue testified that he treated him in the accident room at the hospital for multiple contusions and abrasions and complete laceration of the right heel. Dr. McMains, who is an orthopedic surgeon, testified that plaintiff “sustained a compound fracture of the right talus, and a severance of the tendo achilles and was complaining of pain in his low back region and also was found to have microscopic hematuria.” This doctor’s testimony was further to the effect that this back pain lasted for six or eight weeks. There is, however, no permanent disability to the back. Two operations were performed to repair the severed achilles tendon and there was an attendant suortening of said tendon but doctor said this was not, functionally speaking, significant. The doctor further testified that the boy “limped for months” after the accident but that at the time of his last examination he did not have a limp. There was further testimony to the effect that the scar tissue at the site of the wound causes blistering of the heel due to the pressure of shoes. It was the opinion of the doctor that the boy might continue to have some difficulty with this throughout the rest of his life. There is one inch of atrophy in the right leg and it is apparent that the leg is not as strong as before the accident and extended use of the leg creates a fatigue factor which will apparently be permanent. However, the evidence shows that for some six months prior to the trial the boy had been participating in various athletic activities. The medical testimony is to the effect that the boy will *465 be able to engage in athletics and could be employed in construction work but the fatigue factor would be present in his leg.
There are no Louisiana cases fixing an award for a severed achilles tendon but in view of what has heretofore been said it is apparent the boy had completely recovered at the date of the trial with the exception of his heel blistering on occasion and the weakening of his leg from extended use. Since his own doctors do not think he will experience further difficulty, we believe the award herein to he adequate. The special damages awarded are likewise found to he correct.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
HERGET, J., recused.